UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ABBOTT LABORATORIES, et al., PRETERM INFANT NUTRITION PRODUCTS LIABILITY LITIGATION | MDL No. 3026 |
| | Master Docket No. 22 C 71 |
| This Document Relates to: Removed California Cases[1] | Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

In this opinion, the court addresses motions to remand in six related cases within the multidistrict litigation. Each case was filed in California state court, removed to federal court by Defendant Abbott Laboratories, and transferred to this district by the Judicial Panel on Multidistrict Litigation. Plaintiffs believe these cases should be remanded to state court for lack of federal subject-matter jurisdiction. Each Plaintiff, a California citizen, brings at least one claim against a California-based hospital—a fact that would appear to frustrate the requirement of complete diversity. Abbott nevertheless urges the court to disregard the nondiverse hospital defendants and retain these cases in the MDL. Citing the fraudulent joinder doctrine, Abbott contends that Plaintiffs do not state any viable claims against the hospital defendants, having joined them solely to frustrate diversity and avoid federal court. As explained below, the court concludes that Abbott has not met its heavy burden to establish fraudulent joinder and grants Plaintiffs' motions to remand.

---

[1] This opinion resolves motions to remand in six cases that were removed from California state court before being transferred to this district and consolidated in the MDL: *Pariani v. Mead Johnson & Co.*, No. 22 C 4115 [8, 27]; *Lafond v. Mead Johnson & Co.*, No. 22 C 4116 [7, 30]; *Thomas v. Mead Johnson & Co.*, No. 22 C 4117 [11, 39]; *Tracy v. Mead Johnson & Co.*, No. 22 C 4118 [14, 44]; *Hartwick v. Mead Johnson & Co.*, No. 22 C 4120 [10, 43]; and *Harrell v. Abbott Laboratories*, No. 22 C 3590 [24].

**BACKGROUND**[2]

Each Plaintiff is a natural person and a citizen of California. (Compl. ¶¶ 3–10, *Thomas*, No. 22 C 4117 [1-2] (hereinafter "Compl.").) Plaintiffs' claims arise out of injuries suffered by their preterm infants, who were given cow's-milk-based formula that allegedly caused the infants to develop a dangerous gastrointestinal condition called necrotizing enterocolitis ("NEC"). (*Id.* ¶ 1.) Plaintiffs assert claims against two sets of Defendants: the "Manufacturer Defendants" (including Abbott) and the "Hospital Defendants."[3] As their name implies, the Manufacturer Defendants manufacture and market cow's-milk-based infant formula products. (*Id.* ¶¶ 11–12.) The Hospital Defendants own and operate the California hospitals where the injured infants were fed the Manufacturer Defendants' products. (*Id.* ¶ 13.)

Plaintiffs allege that "[e]xtensive scientific research" has confirmed that cow's-milk-based formula products "cause NEC in preterm and low-birth-weight infants." (*Id.* ¶ 50.) According to Plaintiffs, there exist several options for feeding preterm infants that are safer than cow's-milk-based products, such as "the mother's own milk," "pasteurized donor breast milk" (which can be delivered nationwide through "an established network"), and "shelf-stable formula and fortifiers derived from pasteurized breast milk." (*Id.* ¶ 58.)

---

[2] For the factual background section, the court draws on the complaint in *Thomas*, No. 22 C 4117. Counsel representing Plaintiffs in five of these cases (all but *Harrell*) has averred that *Thomas* is representative of the other four in that group, at least with respect to the remand briefing. (*See, e.g.*, Decl. of Alexandra M. Walsh ¶¶ 3–8, *Pariani*, No. 22 C 4115 [28].) The court has also reviewed the complaint in *Harrell* and concluded that it is materially identical for the purpose of this brief factual overview.

[3] The Hospital Defendants are Northbay Healthcare Group d/b/a Northbay Medical Center (in *Pariani*, No. 22 C 4115); Dignity Health d/b/a Mercy Medical Center Redding (in *Lafond*, No. 22 C 4116); Sutter Bay Hospitals d/b/a Alta Bates Summit Medical Center Alta Bates Campus and Alta Bates Summit Medical Center Summit Campus (in *Thomas*, No. 22 C 4117); Regents of the University of California, Kaiser Foundation Hospitals d/b/a Kaiser Permanente Walnut Creek Medical Center, Kaiser Permanente Santa Rosa Medical Center, and Kaiser Permanente San Francisco Medical Center (in *Tracy*, No. 22 C 4118); Kaiser Foundation Hospitals Inc. d/b/a Kaiser Permanente Oakland Medical Center, Kaiser Permanente San Leandro Medical Center, and Kaiser Permanente Hayward Medical Center (in *Hartwick*, No. 22 C 4120); and Dignity Health d/b/a Mercy San Juan Medical Center (in *Harrell*, No. 22 C 3590).

Plaintiffs allege that the relative dangers of cow's-milk-based formula products were already well known when their infants were fed the Manufacturer Defendants' products at the Hospital Defendants' facilities. (*Id.* ¶ 62.) Based on this scientific evidence, Plaintiffs say, the Hospital Defendants "knew or should have known" that allowing the Manufacturer Defendants' products to be given to Plaintiffs' preterm infants would increase the infants' risks of developing NEC. (*Id.* ¶ 90.) But the Hospital Defendants have allegedly "continued to purchase, supply, and distribute" the Defendant Manufacturers' products in their hospitals "without providing full and adequate warnings of the attendant risks to parents, healthcare professionals, and other medical staff at its relevant facilities." (*Id.* ¶ 94.)

Plaintiffs bring several claims against the Manufacturer Defendants, including strict liability design defect, strict liability failure to warn, negligence, intentional misrepresentation, and negligent misrepresentation. (*Id.* ¶¶ 99–144.) As between Plaintiffs (who are domiciled in California) and the Manufacturer Defendants, there is diversity of citizenship: Defendant Mead Johnson Nutrition Company is incorporated in Delaware and has its principal place of business in either Illinois or Indiana (*see id.* ¶ 11; Notice of Removal ¶ 28, *Thomas*, No. 22 C 4117 [1]), Defendant Mead Johnson & Company, LLC is a limited liability company that is organized under the laws of Delaware and has the citizenship of its sole member, Mead Johnson Nutrition Company (Compl. ¶ 11), and Defendant Abbott is incorporated in and has its principal place of business in Illinois (*id.* ¶ 12).

In addition to their claims against the Manufacturer Defendants, each Plaintiff brings a claim for negligent failure to warn against at least one Hospital Defendant.[4] (*Id.* ¶¶ 145–58.) As

---

[4] Some Plaintiffs have also brought survival and wrongful death claims against one or more Hospital Defendants. (*See, e.g.*, Compl. ¶¶ 159–65.) Under California law, to recover for survival or wrongful death, the plaintiff must establish an underlying claim. *See Lattimore v. Dickey*, 239 Cal. App. 4th 959, 968, 191 Cal. Rptr. 3d 766, 773 (2015) (noting that a wrongful death action requires an underlying tort); *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1264, 45 Cal. Rptr. 3d 222, 227 (2006) (noting that a survival action derives from a claim that the decedent possessed before their death). The court's fraudulent joinder analysis therefore addresses only

between Plaintiffs and these Defendants, diversity is lacking: Each Hospital Defendant is incorporated in and has its principal place of business in California, where Plaintiffs are domiciled. (*Id.* ¶ 13.)

## PROCEDURAL HISTORY

Each of these six cases was filed in California state court by Plaintiffs, removed to federal court by Abbott, and transferred to this district by the Judicial Panel on Multidistrict Litigation. In one of the six cases, *Harrell*, Plaintiff did not file a motion to remand until after the case had been transferred to this district and consolidated in the MDL. The parties addressed their briefs on that motion directly to this court, relying on Seventh Circuit precedent on fraudulent joinder. In the other five cases, Plaintiffs filed their remand motions when their cases were still docketed in federal district courts in California, citing Ninth Circuit precedent on fraudulent joinder. Before the motions had been decided, these five cases were transferred to this district and consolidated in the MDL. Upon transfer, the pending motions were stricken without prejudice under this court's Case Management Order No. 1. (*See* CMO 1, § 6(b), No. 22 C 71 [34].) Plaintiffs have now now filed "administrative motions" asking this court to rule on their remand motions based on the previously submitted briefing. The administrative motions seek, in effect, to renew the stricken, pre-transfer motions.

Abbott asks the court to deny the administrative motions and order new omnibus briefing in these five cases. Abbott argues, first, that Plaintiffs have flouted the Case Management Order, which stated that all pre-transfer motions that were pending upon transfer "must eventually be re-filed in this court." More substantively, Abbott points out that in the five non-*Harrell* cases, the remand briefing relies on Ninth Circuit law, not Seventh Circuit law, when discussing the doctrine of fraudulent joinder. Although Abbott urges that new omnibus briefing would be "the most efficient way to proceed," it suggests one alternative solution: "To the extent this Court is not

---

Plaintiffs' negligent failure-to-warn claims, as those claims provide the necessary basis for Plaintiffs' survival and wrongful death actions against the Hospital Defendants.

interested in further briefing," it should rely on the briefing in *Harrell*—"the only California removed case in which the remand motion was filed in the MDL and addresses Seventh Circuit law."

Abbott may be correct that the non-*Harrell* Plaintiffs did not follow the letter of the Case Management Order, but the court is comfortable proceeding to a ruling on these motions without further briefing. The underlying principles of California tort law do not change depending on which federal district court the motion is filed in, and Abbott has identified no material differences between the Seventh Circuit and Ninth Circuit fraudulent joinder rules that might affect the analysis of those underlying state law issues. As discussed below, the court resolves this motion by following Seventh Circuit case law on fraudulent joinder, but it has relied on the briefing in all six cases to assess whether Plaintiffs have stated a viable claim under California state law.

## DISCUSSION

Plaintiffs argue that these cases must be remanded to California state court for lack of diversity under 28 U.S.C. § 1332(a). While Abbott concedes that Plaintiffs and the Hospital Defendants are nondiverse, it asks the court to disregard the Hospital Defendants' citizenship under the fraudulent joinder doctrine. In Abbott's view, Plaintiffs have not stated viable claims against the Hospital Defendants, because California law does not allow a negligent failure-to-warn claim against a defendant that acted primarily as a provider of medical services, not as a manufacturer, distributor, or seller of the products at issue. Plaintiffs maintain that their claims are indeed valid under California law.

**I.     Choice of Law**

In discussing the viability of Plaintiffs' tort claims against the Hospital Defendants, the court applies California state law. *See Chang v. Baxter Healthcare Corp.,* 599 F.3d 728, 732 (7th Cir. 2010) ("When a diversity case is transferred by the multidistrict litigation panel, the law applied is that of the jurisdiction from which the case was transferred . . . .").

In discussing the federal jurisdictional principles raised by these motions (including the principles that govern the question of fraudulent joinder), the court follows Seventh Circuit

5

precedent. *Cf. McMasters v. United States*, 260 F.3d 814, 819 (7th Cir. 2001) (holding that the court to which a diversity case has been transferred under 28 U.S.C. § 1404 is "free to decide [federal issues] in the manner it views as correct without deferring to the interpretation of the transferor circuit" (quoting *In re Korean Air Lines Disaster of September 1, 1983*, 829 F.2d 1171, 1174 (D.C. Cir. 1987) (Ginsburg, J.) (alteration in original))). Although the Seventh Circuit has not addressed the question of which law applies to federal issues in cases transferred through the MDL process, *see* 28 U.S.C. § 1407, other circuits have recommended the application of the transferee circuit's interpretation of federal law. *See, e.g.*, *Korean Air*, 829 F.2d at 1175 ("[B]ecause there is ultimately a single proper interpretation of federal law, the attempt to ascertain and apply diverse circuit interpretations simultaneously is inherently self-contradictory."); *see also In re Sulfuric Acid Antitrust Litig.*, 743 F. Supp. 2d 827, 853–54, 853 n.5 (N.D. Ill. 2010) (collecting cases). Courts in this district have followed this approach, applying Seventh Circuit case law. *See, e.g.*, *Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*, 314 F.R.D. 580, 589 n.7 (N.D. Ill. 2016).

## II. Fraudulent Joinder Standard

Under Seventh Circuit precedent, "[f]raudulent joinder occurs either when there is no possibility that a plaintiff can state a cause of action against nondiverse defendants in state court, or where there has been outright fraud in plaintiff's pleading of jurisdictional facts." *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). Absent the contention that a plaintiff has made false allegations of fact, a defendant seeking to establish fraudulent joinder bears the "heavy burden" of showing that "after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013) (quoting *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992)). Put differently, the court asks "whether there is 'any reasonable possibility' that the plaintiff could prevail against the non-diverse defendant." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 764 (7th Cir. 2009) (quoting *Poulos*, 959 F.2d at 73). This standard "is even more favorable

to the plaintiff than the standard that applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *See id.* (collecting cases). Only if the defendant clears this high hurdle—showing that the plaintiff has no reasonable possibility of succeeding in its claim against a nondiverse, in-state defendant—may the court conclude that the in-state defendant has been fraudulently joined. *See id.* at 763.

The court notes, finally, that fraudulent joinder analysis includes no inquiry into the plaintiff's subjective intent or motive. *See Ali v. Volkswagen Grp. of Am., Inc.*, No. 19 C 06148, 2020 WL 5250669, at *3 (N.D. Ill. Sept. 3, 2020) ("[A] viable claim obviates the need to inquire further into motive, because a court cannot conclude as a matter of law that the motive for joinder is solely to destroy diversity."); *Schumacher v. Sterigenics U.S., LLC*, 394 F. Supp. 3d 837, 847 n.4 (N.D. Ill. 2019) (similar).

### III. California Law

As noted above, each Plaintiff brings a negligent failure-to-warn claim against at least one Hospital Defendant. Abbott insists that these claims are nonviable because the Hospital Defendants acted primarily as service providers—not manufacturers, distributors, or sellers of the cow's-milk-based formula products at issue. Plaintiffs, however, believe that Abbott wrongly conflates their negligence theory with a strict liability claim. In Plaintiffs' view, negligent failure to warn "can be asserted against medical providers who distribute products in the course of providing services."

A key premise of Abbott's argument is that "the business of a hospital is to provide medical services to patients," not to peddle products as a manufacturer, distributor, or seller does. In this vein, Abbott cites a string of cases rejecting failure-to-warn claims against service-providing hospitals. *See Silverhart v. Mount Zion*, 20 Cal. App. 3d 1022, 1027, 98 Cal. Rptr. 187, 190–91 (Ct. App. 1971) ("The essence of the relationship between a hospital and its patients does not relate essentially to any product or piece of equipment it uses but to the professional services it provides."); *Shepard v. Alexian Bros. Hosp.*, 33 Cal. App. 3d 606, 611, 109 Cal. Rptr. 132 (Ct.

7

App. 1973) (similar); *Hector v. Cedars-Sinai Med. Ctr.*, 180 Cal. App. 3d 493, 502–03, 225 Cal. Rptr. 595, 597–98 (Ct. App. 1986) (similar); *San Diego Hosp. Ass'n v. Superior Ct.*, 30 Cal. App. 4th 8, 16, 35 Cal. Rptr. 2d 489, 493 (1994) (similar).

As Plaintiffs point out, however, these four decisions involved only *strict liability* claims, not negligence claims. *Silverhart*, 20 Cal. App. 3d at 1027–28, 98 Cal. Rptr. at 190–91 (rejecting the application of strict liability to a hospital that furnished a surgeon with a needle that broke during the plaintiff's surgery); *Shepard*, 33 Cal. App. 3d at 610–11, 109 Cal. Rptr. at 134 (holding similarly with respect to a blood transfusion contaminated with hepatitis); *Hector*, 180 Cal. App. 3d at 503–05, 225 Cal. Rptr. at 599–600 (holding similarly with respect to a faulty pacemaker); *San Diego*, 30 Cal. App. 4th at 15–17, 35 Cal. Rptr. 2d at 492–93 (holding similarly with respect to a laser that injured a surgeon).

Because the analysis in *Silverhart*, *Shepard*, *Hector*, and *San Diego* turned on policy considerations unique to claims of strict liability under California law, their holdings are properly read as limited to that form of claim. *See Silverhart*, 20 Cal. App. 3d at 1028, 98 Cal. Rptr. at 191 (observing that it "does not subserve the policy considerations which gave rise to the strict liability doctrine to extend its standard of liability to defendant hospital"); *Shepard*, 33 Cal. App. 3d at 610–12, 109 Cal. Rptr. at 134–36 (similar); *Hector*, 180 Cal. App. 3d at 507–08, 225 Cal. Rptr. at 601–02 (similar); *San Diego*, 30 Cal. App. 4th at 17, 35 Cal. Rptr. 2d at 493 (similar); *see also Conte v. Wyeth, Inc.*, 168 Cal. App. 4th 89, 101, 85 Cal. Rptr. 3d 299, 310 (2008) ("Negligence and strict products liability are separate and distinct bases for liability that do not automatically collapse into each other because the plaintiff might allege both when a product warning contributes to her injury.").

Nothing in these cases excludes the possibility of a *negligent* failure-to-warn claim against a hospital. Indeed, each opinion emphasized that although the service-providing hospital could not be held strictly liable for failure to warn, the hospital remained generally subject to liability for its negligence. In *Silverhart*, the court noted that the hospital's liability "would depend on whether

8

it was negligent or guilty of intentional misconduct." 20 Cal. App. 3d at 1028, 98 Cal. Rptr. at 191. The *Shepard* court recognized, similarly, the "time-honored, well-established law which states that those who sell their services . . . cannot be made liable in the absence of negligence or intentional misconduct." 33 Cal. App. 3d at 613–14, 109 Cal. Rptr. at at 136; *see also Hector*, 180 Cal. App. 3d at 502, 225 Cal. Rptr. at 598 (similar); *San Diego*, 30 Cal. App. 4th at 17, 35 Cal. Rptr. 2d at 493 (emphasizing that "[t]he hospital remains liable for the consequences of any intentional or negligent acts").

Beyond those general statements, Plaintiffs cite *Bigler-Engler v. Breg, Inc.*, where the court held squarely that a service-providing hospital may be liable for negligent failure to warn about a dangerous product. *See Bigler-Engler*, 7 Cal. App. 5th 276, 315–316, 213 Cal. Rptr. 3d 82, 116 (2017). In *Bigler-Engler,* the plaintiff was injured by an ice machine that her doctor had directed her to use continuously after knee surgery. *Id.* at 286–89, 213 Cal. Rptr. 3d at 92–95. A jury found against the doctor's hospital group, Oasis MSO, Inc., on strict liability claims as well as a negligent failure-to-warn claim. *Id.* at 291, 213 Cal. Rptr. 3d at 96–97. Oasis argued on appeal (as Abbott argues here) that the plaintiff had failed to establish that Oasis was a manufacturer or distributor of the ice machine. *Id.* at 315–16, 213 Cal. Rptr. 3d at 116. The appellate court agreed that Oasis could not be held strictly liable with respect to the ice machine, but it upheld the jury verdict in favor of the plaintiff on the negligent failure-to-warn claim. *Id.*

Citing *Silverhart*, *San Diego*, and similar cases, the appellate court held that "[c]auses of action based in negligence are not affected" by the rule that hospitals are medical service providers that are not subject to strict liability. *Id.* at 317, 213 Cal. Rptr. 3d at 118. Because negligence imposes a more demanding standard than strict liability claims, the court concluded that "[t]he policy reasons for shielding medical providers like Oasis from strict liability . . . do not apply with the same force to negligence actions." *Id.* at 316–18, 213 Cal. Rptr. 3d at 117–18 (discussing how strict liability doctrine is calibrated to "enhance product safety, maximize protection to the injured plaintiff, and apportion costs among the defendants" (quoting *Arriaga v.*

9

*CitiCapital Com. Corp.*, 167 Cal. App. 4th 1527, 1537, 85 Cal. Rptr. 3d 143, 151 (2008))); *id.* at 317, 213 Cal. Rptr. 3d at 118 ("Engler's claim for negligent failure to warn, as its name implies, required Engler to prove that Oasis had acted negligently."). Put another way, the *Bigler-Engler* court found no reason to insulate a hospital defendant from the consequences of its negligence in supplying a product in the course of providing a medical service.

Abbott's attempts to distinguish *Bigler-Engler* are not persuasive. First, Abbott points out that *Bigler-Engler* was on appeal from a jury verdict, whereas this case remains at the pleading stage. But Abbott does not explain how the procedural posture is material to a pure question of law. California law either *does* or *does not* allow a negligent failure-to-warn claim against a hospital that supplied a product in the course of providing a medical service. If the *Bigler-Engler* court believed that California law disallowed such a negligence claim, then it would have overturned the jury verdict—just as it did on the strict liability claim.

Second, Abbott highlights the appellate court's comment that "Oasis already faces liability for other types of negligence, including medical negligence, and Oasis has not provided any reason why claims for negligent failure to warn should be treated differently." *See Bigler-Engler*, 7 Cal. App. 5th at 317–18, 213 Cal. Rptr. 3d at 118 (noting that "[l]iability for negligent failure to warn does not dramatically expand Oasis's exposure under the circumstances here"). Whatever the court intended with these comments, they cannot fairly be read to mean that the legal viability of one type of claim hinges on whether the specific defendant happens to be subject to other, separate claims as well. The court rejects the notion that Plaintiffs' negligent failure-to-warn claims fail as a matter of law merely because they are the only negligence claims asserted against the Hospital Defendants.

Third, Abbott emphasizes the fact that Oasis had rented the ice machine to the plaintiff. According to Abbott, "entities that rent products to consumers—unlike entities who merely provide medical care—owe a duty to warn of defects in those products as a matter of California law." (Abbott Opp. at 11, *Harrell*, No. 22 C 3590 [28] (citing Jud. Council of Cal., Civ. Jury Instruction

10

No. 1224).) Renting equipment to a patient differs from administering a product within the hospital, but with respect to the negligent failure-to-warn claim, the court did not mention Oasis's renter status at all—much less cite the proposition that Abbott's renter status independently conferred on Oasis a duty to warn. And with respect to the strict liability failure-to-warn claim, the court explicitly held that Oasis was "a provider of medical services *rather than* a mere seller or renter of the Polar Care device." *Bigler-Engler*, 7 Cal. App. 5th at 317, 213 Cal. Rptr. 3d at 117 (emphasis added).

Abbott's other authorities do not satisfy this court that it can look past the specific holding of *Bigler-Engler*. For example, Abbott quotes a model jury instruction providing that, to establish a negligent failure-to-warn claim, a plaintiff must prove that the defendant "manufactured, distributed, or sold the product" at issue. *See Rosa v. City of Seaside*, 675 F. Supp. 2d 1006, 1011–12 (N.D. Cal. 2009) (quoting Jud. Council of Cal., Civ. Jury Instruction No. 1222), *aff'd sub nom. Rosa v. Taser Int'l, Inc.*, 684 F.3d 941 (9th Cir. 2012). Model jury instructions may carry persuasive value in some settings,[5] but the court declines to follow that general, decontextualized instruction over the specific reasoning in *Bigler-Engler*.[6] Abbott also cites *Webb v. Special Electric Co.* for the proposition that "California law imposes a duty to warn only on those 'entities in a product's chain of distribution.'" (Abbott Opp. at 8, *Thomas*, No. 22 C 4117 [17] (quoting *Webb v. Special Elec. Co.*, 63 Cal. 4th 167, 181, 370 P.3d 1022, 1030 (2016)).) But *Webb* said that the duty to warn applies to "*all* entities"—not *only* entities—"in a product's chain of

---

[5] According to the California Rules of Court, the Judicial Council "makes every effort to ensure" that its instructions "accurately state existing law," but "[t]he articulation and interpretation of California law . . . remains within the purview of the Legislature and the courts of review." CAL. R. CT. 2.1050(b).

[6] The case in which the jury instruction is quoted, *Rosa v. City of Seaside*, provides no further insight on the relevant element of the instruction. *Rosa* involved a defendant that was unquestionably a product manufacturer, and the court's analysis turned on whether the defendant's failure to warn was unreasonable. *See Rosa*, 675 F. Supp. 2d at 1008, 1014–15.

11

distribution." *See Webb*, 63 Cal. 4th at 181, 370 P.3d at 1030. By its terms, that statement was not limitative.

Abbott also cites *Anderson v. Owens-Corning Fiberglas Corp.*, in which the California Supreme Court stated that "[n]egligence law in a failure-to-warn case requires a plaintiff to prove that a manufacturer or distributor did not warn of a particular risk for reasons which fell below the acceptable standard of care." *Anderson v. Owens–Corning Fiberglas Corp.*, 53 Cal. 3d 987, 1002, 810 P.2d 549, 558 (1991); *see also Carlin v. Superior Ct.*, 13 Cal. 4th 1104, 1112, 920 P.2d 1347, 1351 (1996) (same). Taken alone, that statement appears to support Abbott's argument that a service-providing hospital cannot be held liable for negligent failure to warn. Read in its context, however, the statement was aimed only at describing the difference between negligence and strict liability claims—namely, the fact that strict liability is "not concerned with the standard of due care or the reasonableness." *Anderson*, 53 Cal. 3d at 1002, 810 P.2d at 558. In other words, the court in *Anderson* was discussing what each liability regime requires as to the existence and contents of a product warning. The court was not discussing what types of entities may be held liable under either of these theories. Thus, the *Anderson* court's incidental reference to "manufacturer[s]" and "distributor[s]" does not undermine the *Bigler-Engler* court's more direct and thorough analysis—or its holding—on the question whether a hospital defendant may be held liable for negligent failure to warn when it supplies a product in the course of providing a medical service.

Other cases cited by Abbott are even less relevant. *See Garrett v. Howmedica Osteonics Corp.*, 214 Cal. App. 4th 173, 182, 153 Cal. Rptr. 3d 693, 699 (Ct. App. 2013) (noting that the purpose of the *strict* products liability doctrine is "to ensure that the loss is borne not by injured consumers but by manufacturers, retailers and others in the chain of distribution who are better able to reduce the risks of injury and can equitably distribute the loss to the consuming public"); *Taylor v. Elliott Turbomachinery Co.*, 171 Cal. App. 4th 564, 575, 90 Cal. Rptr. 3d 414, 421 (Ct. App. 2009) (holding that defendant manufacture could not be held *strictly* liable for "failure to warn

of the dangers inherent in the asbestos-containing materials that were manufactured by others and used with respondents' products"); *O'Neil v. Crane Co.*, 53 Cal. 4th 335, 351, 266 P.3d 987, 997 (2012) (summarizing case law providing that a *manufacturer's* duty to warn is "limited to risks arising from the manufacturer's own product").

When a defendant raises the prospect of fraudulent joinder, the court must ask "whether there is 'any reasonable possibility' that the plaintiff could prevail against the non-diverse defendant." *Schur*, 577 F.3d at 764 (quoting *Poulos,* 959 F.2d at 73). As noted earlier, this standard "is even more favorable to the plaintiff than the standard that applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Id.* Based on the foregoing summary of California law, the court concludes that Plaintiffs do have a reasonable possibility of prevailing against the Hospital Defendants. Abbott has not carried its heavy burden of proving that, as a matter of law, a hospital defendant cannot be held liable for negligent failure to warn when it supplies a product in the course of providing a medical service.

If Plaintiffs' claims are viable, then it follows that the Hospital Defendants were not fraudulently joined. And given that complete diversity is absent, this court lacks subject-matter jurisdiction over these six cases.

## **CONCLUSION**

For the foregoing reasons, the court grants Plaintiffs' motions. An order directing remand will be entered in each of the six case dockets.

ENTER:

Dated: August 29, 2022

_____
REBECCA R. PALLMEYER
United States District Judge

13